IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DIANE CAPUANO, | ) | CASE NO.: 1:17 CV 60 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| STAR PARTNER ENTERPRISES, LLC, | ) | |
| | ) | MEMORANDUM OPINION |
| Defendant. | ) | AND ORDER |
| | ) | |

This matter is before the Court on Defendant, Star Partner Enterprise's' Motion for Summary Judgment. (ECF #16). Plaintiff filed Response, and Defendant filed a Reply in support of its motion. (ECF # 21, 22). The issues have been fully briefed and are now ready for disposition. For the reasons set forth below, Defendant's motion for Summary Judgment is GRANTED.

## FACTS AND PROCEDURAL HISTORY[1]

The Complaint alleges that Ms. Capuano was demoted, required to work under more onerous job conditions, and had her hours reduced all because of her age, in violation of the Age

---

[1] The factual summary is based upon the parties' statements of facts. Those material facts which are controverted, with both sides supported by deposition testimony, affidavit, or other evidence, are stated in a light most favorable to Plaintiff, the non-moving party.

Discrimination Act, 29 U.S.C. §§621-634. . (ECF #1, ¶ 21-24). She also alleges that she was later terminated in retaliation for her filing of a charge of discrimination with the EEOC, in violation of Title VII, 42 U.S.C. §2000 *et seq.* (ECF #1, ¶ 25-28).

Defendant Star Partner Enterprises, LLC ("Star Partner") owned and operated the Kentucky Fried Chicken ("KFC") restaurant where Ms. Capuano worked at all times relevant to the issues in this case. (ECF #16-2: Chellie Decl. ¶ 3). Ms. Capuano worked at the KFC from September 2011 until approximately February of 2013. (ECF #16-1). She was 52 years of age when she was hired. (ECF #26: Capuano Depo. ¶ 6).

## STANDARD OF REVIEW

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-mover. The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as

-3-

an automatic grant of summary judgment, where otherwise appropriate. *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## ANALYSIS

I. Disparate Treatment Claim

Title VII prohibits employers from discriminating against employees on the basis of age. 42 U.S.C. § 2000e; O.R.C. §4112.99. "It is well established that the burden is on an employment discrimination plaintiff to establish a *prima facie* case of discrimination." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (citations omitted). A plaintiff may establish a claim of disparate treatment in one of two ways--via indirect or direct evidence. First, a plaintiff may establish his case "by presenting credible, direct evidence of discriminatory intent." *Mitchell*, 964 F.2d at 582 n.4. In the absence of direct evidence of discriminatory intent, a plaintiff may establish a *prima facie* case of discrimination by disparate treatment by showing that (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and, (4) a similarly situated non-protected person was treated better. *Id; Valley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995);. *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1160 (6th Cir. 1990).

A. Direct Evidence

There is no direct evidence of age discrimination in this case. There is no evidence that

-4-

any manager, supervisor, or other person in power ever commented on or referred to Ms. Capuano's age in relation to her job duties, scheduling, termination, or any other dealings they had with her. There is evidence that one team member or co-worker may have once called her old and lazy, however that team member had no power over Ms. Capuano's working conditions and was disciplined by Star Partners for the altercation that gave rise to those alleged comments. (Stewart Decl. ¶ 17). Isolated remarks are only direct evidence of discrimination when they are made by an individual with decision-making authority. *Golden v. Mirabile Investment Corp.*, Case No. 17-5346 (6th Cir., March 6, 2018)(citing *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004)). This one time statement by a co-worker, which subjected her to disciplinary action, cannot not give rise to a claim of age discrimination by the employer. *See, e.g., Davis v. Monsanto Chem. Co.*, 858 F.2d 345, 349 (6th Cir. 1988); *Smith v. Leggett Wire Co.*, 220 F.3d 752, 759 (6th Cir. 2000).

B. Indirect Evidence

Because there is no direct evidence that Star Partner intended to treat Ms. Capuano differently in her employment based upon her age, in order to maintain her action, she must establish a prima facie case of age discrimination by showing that (1) she was a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action and, (4) a similarly situated non-protected person was treated better. *Id; Valley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995); *Mitchell*, 964 F.2d at 582.

If she is able to satisfy the criteria for a prima facie case, the defendant may counter the implication of discrimination by articulating a legitimate, non-discriminatory reason for its actions. If such a reason is provided, the Plaintiff may counter by showing that the stated reason

-5-

was pretextual. *Harrison v. Metropolitan Gov't of Nashville and Davidson County*, 80 F.3d 1107, 1115 (6th Cir. 1996). Although the burden of persuasion remains with the plaintiff at all times, the burden of production shifts between the parties at each stage. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 207 (1981).

To establish pretext, the plaintiff "may succeed . . . either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256. However, in order to withstand summary judgment, a plaintiff must come forward with evidence demonstrating that the defendant's articulated nondiscriminatory justification is not true. *Thurman v. Yellow Freight Sys.*, 90 F.3d 1160, 1166 (6th Cir. 1996), *amended on denial of reh'g*, 97 F.3d 833 (6th Cir. 1996); *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1082 (6th Cir. 1994). To make a submissible case on the credibility of his employer's explanation, the plaintiff is required to show by a preponderance of the evidence (1) that defendant's proffered reasons for the adverse employment action had no basis in fact, (2) the proffered reasons did not actually motivate the action, or (3) the reasons were insufficient to motivate the adverse action. *Manzer*, 29 F.3d at 1082.

1. Prima Facie Case

Ms. Capuano was, at the time of the events, over forty years of age, and Defendant does not dispute that she was qualified for her position. Therefore, the first two requirements for establishing a prima facie case are established. Ms. Capuano claims that he suffered adverse

action by way of an alleged demotion, and a reduction in her scheduled work hours.² She does not claim, in her Complaint, that her termination was an adverse action resulting from age discrimination, but alleges that was act of retaliation for her filing of an EEOC claim.

### a. Demotion

In support of her claim of demotion Ms. Capuano submitted an affidavit attesting that in June of 2012 she was told that she was being promoted to KeyHolder and she began opening the store. She received a thirty cent per hour raise on July 16, 2012 when the paperwork was completed for this promotion. (ECF #26-1: Capuano Depo., Ex. 8). She was fifty-three years old at the time. (ECF # 26-1: Capuano Depo. at 91). A short time later she was asked if she would immediately take over as opening manager for her shift when the previous manager was fired. (ECF #24-1, ¶¶ 9-10; ECF #26-1, Capuano Depo. at 93-94, 98).³ At that time she was the only

---

2

The Complaint also claims that Star Partners had an atmosphere that supported discriminatory treatment by co-workers, and that Ms. Capuano was assigned more onerous tasks than other, younger, employees. The Complaint alleges that in 2011, her supervisor Mike "was giving unfair and discriminatory preferences in hiring practices and job duties," that she complained, and that she was consequently transferred to another location. (ECF #1, ¶¶ 7-9). She has never claimed that this issue was related in any way to her age or was the result of retaliation. See, ECF # 24-1, ¶¶ 2-7). She also admits that the transfer was an acceptable solution to the issue and that she suffered no adverse consequences from this transfer. (ECF # 26: Capuano Depo. ¶¶ 76-77, 86). As made clear by her counsel at the February 8, 2018 status conference and oral arguments, Ms. Capuano is not claiming that this event, or the events preceding it give rise to any actionable claim. The only instance that Ms. Capuano has cited that could constitute an event arising from an atmosphere of age discrimination is when her co-worker, on one occasion, called her old and lazy. This was in no way encouraged by the management, and the co-worker was disciplined in connection with that altercation. There is no other evidence of any disparity between the types of jobs required of Ms. Capuano and younger team members, nor of any "atmosphere" of age discrimination.

3

According to an internal email between Star Partner supervisors, key holders were not supposed to manage team members or cash. Regional general managers were to "resist the

-7-

person working during that shift who was eligible to be an opening manager. (ECF #26-1: Capuano Depo. at 91).

Ms. Capuano remained on as the opening manager until the fall of 2012, when a new manager was hired and Ms. Capuano went back to her previous duties as a team member or customer service worker. (ECF #24-1, ¶ 11). Shortly after the new manager was in place, Ms. Capuano claims that her regional manager told her that she was no longer a manager and her keys were taken away. This was after the new manager had started and Ms. Capuano had not been opening the store as much. (ECF #26-1: Capuano Depo. at 102-104). She admits, however, that she never lost the raise she received when she was promoted to KeyHolder, and that she does not know if there had ever been paperwork officially recognizing her promotion to manager. The evidence also shows that the new manager was arriving first and opening the store, so there was no need for Ms. Capuano to have keys during the subsequent time period.

Ms. Capuano believes that, Peggy Birch, the woman who took over as opening manager was thirty-eight at the time she took over. (ECF #26-1: Capuano Depo. at 107). Although this places her outside the protected class, Ms. Capuano has provided no evidence showing that she and Ms. Birch were similarly situated. Ms. Capuano had no manager or supervisory training or experience, and had been working for the company for less than a year. There is no evidence relating to Ms. Birch's experience level, seniority, or other qualifications for the manager position. Because there is no evidence that would allow the Court to find that Ms. Capuano was replaced by someone outside the protected class, *who was similarly situated*, she has not met her burden for proving a prima facie case of age discrimination based on her alleged demotion.

---

temptation to let them manage the shifts." (ECF #26-1: Capuano Depo., Ex. 7).

-8-

### b. Reduced Hours

With regard to her claim of reduced hours, Ms. Capuano testified that ideally she would prefer to work from 8:30 to 2:00, Monday through Friday. (ECF #26-1: Capuano Depo. at 58). However, as a team member, she was originally working Monday through Friday 9:00 or 10:00 a.m. to 4:00 p.m.. (*Id.*). She indicated that when she stayed until 4:00, it was often not because she had been scheduled for those hours, but because other workers would not show up or they couldn't find anyone to work. (*Id.* at 58-59). When she was filling in as opening manger, she worked from 8:30 or 9:00 a.m. to 12:00 until another manager arrived. (*Id.* at 93-95, 98). It is unclear from her testimony whether she then stayed on as a team member until 2:00 or 4:00 as she had before. When the new opening manager started, Ms. Capuano's hours were changed to 10:00 a.m. to 2:00 p.m., which she testified was a "little bit" of a cut. (*Id.* at 100). Despite this reduction in scheduled hours, Ms. Capuano stated that the new opening manager "ended up letting me work, because nobody would show up, or they couldn't find anybody." (*Id.*). She testified that although the hours were never really regular, "for the most part" her hours ended up being from 9:00 to 4:00, Monday through Friday. (ECF #26-1: Capuano Depo. p. 123). Further, she testified that because she was working so many unscheduled hours she "couldn't wait to get help." (*Id.* at 108). Through this point, there is no evidence that Ms. Capuano's hours were significantly less than when she started, or that she was working less hours than she wanted to work. Thus, none of the changes to her scheduled hours up to this point constitute an adverse action that could form the basis of a discrimination claim.

In December of 2012, however, Ms. Capuano testified that she was cut down to only two days of work per week. She also testified that the additional hours were filled by much younger

workers who she claims had less experience and equal job requirements. The evidence presented creates a sufficient inference that Ms. Capuano's hours were assigned to non-protected workers who were similarly situated. She has, therefore, established a prima facie case for age discrimination based on her reduced hours, beginning in December of 2012.

Star Partner admits that Ms. Capuano's hours were cut, but claims that it had a legitimate, non-discriminatory reason for reducing her hours. It claims that Ms. Capuano's hours were reduced because she refused to work the drive-in window. When there are three team members on schedule, all members are required to share the drive through work. Since she refused to work the drive through, she could only be scheduled for shifts when four team members were scheduled to work and there was a designated drive through worker. (ECF #26-1: Capuano Depo. Ex. 9; Stewart Decl. ¶ 12) . According to Star Partner, this reduced the amount of available shifts Ms. Capuano could work, and consequently, reduced her work hours. Defendant also presented some evidence that would suggest that the number of workers scheduled was also reduced due to the holiday season.

Having provided a legitimate, non-discriminatory reason for the cut in hours, Star Partner cannot be found guilty of age discrimination unless Ms. Capuano can show that their reason was mere pretext for discrimination. Although she claims that she was willing to fill in on the drive through at various times, Ms. Capuano admits that she did tell her district manager that she would not work the drive through in the morning because she believed the opening manager should handle it. She believed that the only reason the opening manager was asking her to run the drive through, in addition to front register and prepping duties was because the manager was on the phone with her boyfriend for hours and was not doing her own work. (ECF #26-1: Capuano

Depo. pp. 118-122). She also does not dispute that the holiday season played some role in the reduction of available hours. Because she admits that she refused to work the drive-in for at least the morning hours when the she believed the opening manager should have been performing that task, she has not provided any evidence that would suggest that Defendant's non-discriminatory explanation for her cut in hours was merely pretextual, or that her reduction in hours was more likely motivated by age discrimination. Ms. Capuano has, therefore, failed to present sufficient evidence to satisfy her burden of persuasion on the issue of age discrimination.

II. Retaliation

In order to establish a prima facie case for retaliation, a plaintiff must demonstrate: (1) that she engaged in protected activity; (2) that the employer knew of her exercise of protected rights; (3) that she was the subject of adverse employment action; and, (4) that there is a causal link between the protected activity and the adverse employment action. *See, e.g., Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516 (6th Cir. 2008). According to Ms. Capuano, she was terminated when she was removed from the schedule following an altercation with a younger co-worker on February 8, 2013. She claims that she was told on February 17, 2013 that the manager at her restaurant had been instructed to take her off the schedule because of the altercation and that she could be terminated. (ECF #21-1: Capuano Aff. ¶ 27). "Shortly after that" the opening manager told her that she would not be put back on the schedule, and she was, in fact, never again put on the schedule. (ECF #21-1: Capuano Aff. ¶ 28). Star Partner claims that it was her choice to be left off the schedule, and Ms. Capuano denies this claim. Star Partner also claims that they did not officially terminate her until August of 2013. Viewing the evidence in the light most

-11-

favorable to Ms. Capuano, once Defendant decided to remove her from the schedule in February of 2013, she was effectively terminated.

Ms. Capuano had filed her EEOC claim on February 7, 2013. According to Star Partners, it received notice of the EEOC filing until March of 2013. (ECF #16-2: Stewart Decl. ¶ 19). An Amendment to the claim was marked "received" by the EEOC on April 10, 2013. (ECF #26-25). Ms. Capuano has not cited to any evidence that would show Star Partner was aware of the EEOC charge prior to the date that she claims that she was terminated. Therefore, Ms. Capuano has failed to present a prima facie case of retaliation because she has not shown that the Defendant was aware of her protected activity at the time of the adverse action, and has presented no evidence that would show a causal connection between the filing of her EEOC complaint and her termination.

### III. After Acquired Evidence

Under the after-acquired evidence doctrine, evidence of a Plaintiff's misconduct, acquired after her employment has terminated, may constitute independent grounds for termination, and can be used to prevent her from pursuing damages against her former employer. *Conaway v. AutoZone, Inc.*, 866 F.Supp. 351, 353 (N.D. Ohio 1994); *See also, McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 361-363 (1995). In her deposition, Ms. Capuano admitted that she lied on her application when stating her level of education. She indicated on the application that she completed four years of high school and obtained a degree when, in fact, she had only attended through the ninth grade. (ECF #26-1: Capuano Dep. p. 47, Ex. 1). She also testified, however, that she told "Jeff," the person who hired her that she didn't finish high school. (*Id.* at

p. 47). Defendant claims that if it had known that Ms. Capuano lied about her education history in her employment application, it would not have hired her. There appears to be a question of fact as to whether or not Defendant was aware of the misstatement regarding Ms. Capuano's educational history prior to hiring her, and/or prior to her termination. Therefore, if Ms. Capuano had presented a triable issue on age discrimination or retaliation, summary judgment would not have be appropriate based solely on the after acquired evidence doctrine in this case.

## CONCLUSION

For the reasons set forth above, the Defendants' Motion for Summary Judgment (ECF #16) is hereby GRANTED. IT IS SO ORDERED.

*/s/ Donald C. Nugent*
Judge Donald C. Nugent
United States District Judge

Date: March 9, 2018